MORRIS L. DUNCAN *v.* CHRISTIAN BOYE.

No bailee is responsible for not insuring goods under his charge, unless he has instructions so to do.

APPEAL from the Sixth District Court of New Orleans, *Howell,* J. *Durant & Hornor for plaintiff and appellant.*—Plaintiff sues defendant for goods sold and delivered, to the amount of $1,959, and files his invoices with his petition.

The defence is lengthy : 1. The general issue. 2. A special denial that defendant ever ordered the goods, and a statement of the course of trade between him and plaintiff. 3. That the invoices of April, May and June, 1860, were lost by fire in August, 1860; and, consequently, defendant is not liable for them. 4. That a portion of the goods received since the fire are unsaleable, and he is willing to return them. 5. That he has sold the rest of the goods, and is willing to pay for them at wholesale Cincinnati prices. 6. The want of any amicable demand. The prayer of the answer is that this suit may be dismissed.

The judgment of the lower court was for $764 20, and from it plaintiff has appealed suspensively. We propose discussing each item in this labored defence in its order, and will then recur to the judgment of the lower court.

And, 1. As to the general denial, there is no doubt that all the goods charged in the invoices were received by Boyé. The general issue is waived by the special defence. 2. Boyé denies ever having ordered the goods from plaintiff, for which he claims payment. This is a grave error of fact. The course of trade between the parties was peculiar. Duncan was a manufacturer ; Boyé a seller. "Boyé would write for furniture, and Duncan would send it on his orders ; and Duncan would send furniture without orders, often." Boyé has received all the goods contained in the invoices. All the goods in the first three invoices were burned, nearly. All the other goods in the remaining invoices have been sold, except some bureaus. Admission in answer.

Though the evidence leaves the point in some obscurity as to the goods received after the fire, yet we think it is plain that, as to all the goods received before the fire, the relations of the plaintiff and defendant were those of vendor and vendee.

"Proof that the goods have been delivered to the defendant, and that he has used them, is *prima facie* evidence of a contract, without proving any order." 2 Starkie's Ev. p. 837.

It seems to us that defendant strives to change these legal relations, and introduce others for the purpose of sustaining an unfair defence, after he has long acquiesced in plaintiff's way of doing business.

The bill sued upon gives credit for Boyé's note, dated 28th November, 1860, at sixty days' date, the note itself, introduced by defendant; the settlements were made semi-annually. And at the foot of the bill sued

35

Duncan
*v.*
Boye.

upon, are found these words: "Interest on the above bills four months after date."

It is, then, clear that, at the date of the note, and even at its maturity, 30th January, 1861, if "defendant's theory" be correct, not a dollar was due by him to plaintiff. It is not usual for merchants, and specially such merchants as the defendant, to pay in advance. No such thing is alleged. Defendant owed at the date of the note what was due and payable, to wit: the goods contained in the first three invoices. It was a full admission that he owed for them, up to the amount of the note, on the day the note was dated. It was in accordance with his promise to pay for them, made to plaintiff in Cincinnati, as soon as he received his insurance. The note was on account of the shipments made in April, May and June. Goods shipped in the fall were settled for in the spring, and goods shipped in the spring were settled for in the fall.

The other facts in this case entirely harmonize with this statement; and the whole is altogether inconsistent with the idea thrown out in defendant's answer, that this was a payment on the invoices of September and October. Indeed, the statement in the answer itself is inconsistent. It alleges that the goods in these invoices were disposed of between the latter part of 1860 and the spring of 1862. Even Déjean does not substantiate defendant's story. *Fraus est celare fraudem.*

A payment is, in its nature, though not in its essence, posterior to the debt. *Thomas* v. *Elkins*, 4 Martin, 378.

None of the goods, so far as the evidence shows, were sold prior to the date of the note or its maturity. And no attempt has been made to prove that this payment was made on the invoices of September or October. The whole course of business between the parties contradicts the assumption.

The note is an admission for value received at its date; and the attempt to pervert its meaning can only rebound upon its maker.

Receiving the goods and paying for a portion, not in any way defined, makes the defendant the owner of the whole. He is, therefore, liable for the invoices of 13th April, 25th May and June 9th, amounting to $763.

The lower judge, however, has entirely rejected this portion of our claim.

We advance to the third point of the defence, viz: that the invoices of April, May and June, 1860, were lost by fire in August, 1860, and consequently, defendant is not liable for them. This was sustained by the judge below, probably upon two grounds: 1. That the course of dealing continued the ownership in Duncan till the goods were sold, and *resperit domino.* 2. That the evidence showed no new contract by which Boyé bound himself to pay the loss.

This defence of *vis major* must, to be successful, be clearly made out. And, in the first place, your honors must be satisfied that defendant was not the owner of the goods; for, if he were the owner at the time of the fire, the loss was his, undoubtedly. That he was the owner, we think we have clearly shown.

But, if he were not the owner, what was he? In what legal relation did he stand towards the plaintiff? It may have been that of agent and principal, bailor and bailee; or Boyé might have been a mere *negotiorum*

*gestor.* They were dealing together on some terms, and plaintiff had the right to call upon him for an account, as trustee, unless defendant was the owner.

In this view of the case, when defendant is asked for payment, or for an account, he says the goods were all burned, "as well the goods belonging to the respondent as those belonging to the plaintiff;" and he proves the fact fully and satisfactorily. But there is always fault to be attributed to a person who sets up fire as a defence. Some cases of *vis major*, such as inundation, earthquakes, hail, snow, storms and tempests, the acts of government, war, an attack by brigands, an abuse of force, excuse all idea of fault and imprudence; others do not; and to this class belongs fire. Larombière on C. N. 1148; La. C. 1927, 2216.

Defendant carefully keeps out of view that he was insured against fire. That he was insured, results from his promise to pay after he collected the insurance money. He was a trustee. He was bound to take the same care of his principal's property as of his own. When he alleges a total loss of his own stock by fire, he alleges what is not true, when he collects a portion or the whole of its value from the insurance companies. Here, the whole matter rests within his own knowledge. He suppresses every detail of it. In such a case, every thing must be taken against him. *Ralston* v. *Barclay*, 6 Martin, 653; *Berthoud* v. *Gordon et al.*, 6 La. 583.

We now come to the fourth ground of defence, that a portion of the goods received since the fire are unsaleable, and that he is willing to return them.

These goods are still in the hands of the defendant. We do not think, even if your honors decide that they are ours, that, after a lapse of thirty months, we should be non-suited on this portion of our claim. When Kelly asked defendant for a settlement, he did not refuse payment, nor did he claim any deduction on account of goods having been burnt. Nor does it appear that he has ever made any real tender followed by consignment. La. C. 2163, et seq.; 12 An. 267. If the court considers them his property, he must be made to pay for them. If not, he should be ordered to deliver them, at his own expense, to the plaintiff, at any place in this city he may designate.

*C. E. Schmidt for defendant.*—I am at a loss to conceive upon what grounds the plaintiff bases his hope of a reversal of the judgment of the lower court. In the oral argument before that court, his counsel insisted that the plaintiff's goods should have been insured by the defendant. This the latter had never been requested to do, and had never done, and Duncan was never charged any insurance premium. How could Duncan pretend not only to thrust his goods upon the defendant, *nolens volens*, use his store-rooms and warehouses, without paying storage, and moreover, expect the defendant to pay the insurance on his goods, although he had never instructed him to insure? That this pretence of the plaintiff is unfounded, either in law or in equity, is apparent from a reference to the following cases: *Patterson* v. *Leake*, 5 An. 547; *Tonge* v. *Kennett*, 10 A. 800; *Gilly* v. *Berlin*, 12 A. 723. Besides, how can the plaintiff shift his position from that of a party claiming the price of goods which he

DUNCAN
v.
BOYE.

alleges to have sold, to that of a party suing for loss occasioned by the neglect to insure those very goods?

LABAUVE, J. The plaintiff claims of the defendant the sum of $1,959, with interest, balance on an account for house furnitures.

The answer contains, first, a general denial; denies that respondent ever ordered any of the goods which were shipped, without any solicitation and against the desire of respondent; that the goods, being sent in that way, remained the property of plaintiff; that respondent was to sell such portions of them as he could, and only account to plaintiff at wholesale Cincinnati prices for such as he might dispose of; that, after the three first invoices, a fire occured, in August, 1860, which destroyed defendant's and plaintiff's goods; and that he is not responsible, etc. He prayed to be dismissed, at plaintiff's cost.

The District judge, after hearing the testimony, gave judgment for plaintiff, for $764 20, with interest, and the plaintiff appealed.

The case turns entirely on matters of facts and upon the credibility of witnesses. There is, however, a bill of exceptions taken by plaintiff; but it is of no importance.

There is inconsistency between plaintiff's witnesses, who were examined under commissions in Cincinnati, and those of defendant, who testified in open court. The District judge seems to have given more credit to those who gave their testimony here in court. The plaintiff has attempted to make defendant responsible for his (plaintiff's) goods, destroyed by fire, on the ground that said defendant should have insured them as he had done his own.

There is no testimony showing that defendant had ever insured plaintiff's goods, nor that he had been instructed to do so. Defendant cannot be made liable. *Patterson* v. *Leake*, 5 A. 547; *Tonge* v. *Kennett*, 10 A. 800; *Gilly* v. *Berlin*, 12 A. 723.

We have carefully examined the testimony, and we think that the District judge came to a correct decision, and we adopt his judgment.

It is therefore ordered and decreed, that the judgment of the District court be affirmed, with costs.

HOWELL, J., recused.